Thomas L. VANDENBURGH,
Appellant–Petitioner,

v.

Candace A. VANDENBURGH,
Appellee–Respondent.

No. 64A05–0811–CV–673.

Court of Appeals of Indiana.

Nov. 16, 2009.

Steven M. Bush, Millbranth and Bush, Valparaiso, IN, Attorney for Appellant.

**OPINION**

MAY, Judge.

Thomas Vandenburgh ("Father") appeals various child support issues, a finding he was in contempt, and an award of attorney fees to his former wife Candace ("Mother"). We affirm in part and remand.

**FACTS AND PROCEDURAL HISTORY**

Mother and Father were divorced in 2003. They had three children—Lisa, who at the time of the modification hearing that is part of the subject of this appeal, was twenty-one and a senior at Indiana University; John, who was going to be a senior at Purdue; and Mark, who was going to be a senior in high school. In September of 2006, after various motions, hearings, and

1. The pages of the record to which Father directs us as support for his description of the June 2008 order do not include that order.

orders, Father sought a child support modification. In an order issued June 30, 2008, the trial court modified support, determined Father owed Mother $2,500 in attorney fees, and found Father in contempt.[1]

**DISCUSSION AND DECISION**

We note Mother did not provide us with an appellee's brief. When an appellee does not file a brief, we do not need to develop an argument for her and we apply a less stringent standard of review. *In re Guardianship of R.M.M.*, 901 N.E.2d 586, 588 (Ind.Ct.App.2009). We may reverse the trial court if the appellant is able to establish *prima facie* error, which is error at first sight, on first appearance, or on the face of it. *Id.* The appellee's failure to submit a brief does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Khaja v. Khan*, 902 N.E.2d 857, 868 (Ind.Ct.App.2009), *reh'g denied.* Because of the multiple deficiencies in his brief, Father has not shown *prima facie* error.

1. *Child Support—Overnight Credit and Split Custody*

Decisions regarding child support generally rest within the sound discretion of the trial court. *Smith v. Smith*, 793 N.E.2d 282, 284 (Ind.Ct.App.2003). We reverse such a determination only if there has been an abuse of discretion or the trial court's determination is contrary to law. *Id.* By the same token, the purpose of child support is the welfare of the child and not the punishment of the father. *Id.* In some circumstances, a credit may be granted to the noncustodial parent in the

Rather, they include two other orders, one from 2006 and one from 2004, along with some attached documents.

event of nonconforming support payments. *Id.* at 284–85. More specifically, the trial court may afford relief from an unmodified support order if the noncustodial parent has, by agreement with the custodial parent, assumed custody and has provided food, clothing, shelter, medical attention, and school expenses and has exercised parental control for an extended period. *Id.* at 285.

The trial court expressly declined to enter a parenting time credit as to Mark. Father asserts that was an abuse of discretion because Mark testified he stayed overnight with Father Mondays and Thursdays every week and approximately twenty additional overnights per year.[2]

Indiana Child Support Guideline 3(G)(4) provides that trial courts "may grant the noncustodial parent a credit toward his or her weekly child support obligation … based upon the calculation from a Parenting Time Credit Worksheet." *Young v. Young,* 891 N.E.2d 1045, 1047 (Ind.2008). We must decline father's invitation to hold this guideline required the trial court to do so.

In *Sherrard v. Bd. of Comm'rs of Fulton County,* 151 Ind.App. 127, 130, 278 N.E.2d 307, 309 (1972), we noted the rule of statutory construction that "[w]ords and phrases shall be taken in their plain, or ordinary and usual, sense. Technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import." (quoting Ind.Code § 1–1–4–1).[3] There we addressed a statute that said if a county surveyor is registered, "then the county council may increase the salary of one and one half (1 1/2) the base salary by any amount not to exceed $2000.00 per year." *Id.* at 129, 278 N.E.2d at 309. We determined the language of that statute need not be interpreted "in a technical nature," so we treated the words "may" and "shall" in their "plain and ordinary sense of being discretionary and mandatory respectively." *Id.* at 130, 278 N.E.2d at 309.

We do not believe language in the Child Support Guidelines must be interpreted "in a technical nature," and accordingly hold the language "*may* grant the noncustodial parent a credit toward his or her weekly child support obligation" means what it says—such credit is not mandatory. *See Grant v. Hager,* 868 N.E.2d 801, 802 (Ind.2007) (noting under the Guidelines, a Parenting Time Credit is "authorized" based on the number of overnights children spend with the non-custodial parent). We accordingly decline to hold the trial court was obliged to grant parenting

---

**2.** In the argument section of his brief, Father offers seven citations to the transcript in support of that allegation. He also offers one such citation in the summary of the argument section. None of the pages to which he directs us in those eight citations contain any such testimony. We were ultimately able to find one citation in the statement of facts section that did direct us to a page in the record where such testimony could be found. We remind Father's counsel that a reviewing court is not obliged to search the record to find support for a party's arguments. We prefer to decide cases on the merits, but when flaws in a brief require us to become advocates for a party, a line must be drawn. *See Young v. Butts,* 685 N.E.2d 147, 151 (Ind.Ct.

App.1997) ("A court which must search the record and make up its own arguments because a party has not adequately presented them runs the risk of becoming an advocate rather than an adjudicator.").

**3.** We acknowledge this guideline is not a "statute," but believe this rule provides useful guidance in this situation, as it does in contract interpretation. *See Armstrong v. Federated Mut. Ins. Co.,* 785 N.E.2d 284, 292 (Ind. Ct.App.2003) (when interpreting a contract, clear and unambiguous language will be given its plain and ordinary meaning), *reh'g denied, trans. denied* 804 N.E.2d 750 (Ind.2003).

time credit just because Father asked it to and provided evidence that might permit such credit.

Nor may we reverse a parenting time credit determination unless the trial court manifestly abuses its discretion. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 681 (Ind.Ct.App.2008). "No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination." *Id.* The record before us supports the trial court's determination.

The Child Support Guidelines contain a formula for calculating parenting time credit based on the number of "overnights" per year that the noncustodial parent spends with the children. Child Supp. G. 6 Table PT. The commentary to the guidelines provides an "overnight" "should include ... the costs of feeding and transporting the child, attending to school work and the like. Merely providing a child with a place to sleep in order to obtain a credit is prohibited." Child Supp. G. 6 cmt. The rationale behind the parenting time credit is that overnight visits with the noncustodial parent may alter some of the financial burden of the custodial and noncustodial parents in caring for the children. *Young*, 891 N.E.2d at 1048. Because calculating the amount of financial burden alleviated by an overnight visit is difficult, the guidelines provide a standardized parenting time credit formula. *Id.* Not all visits in which a child stays overnight may qualify for the parenting time credit. *Id.*

Mark testified as to the number of occasions when he stayed overnight with Father, and he testified Father provides dinner and breakfast on those occasions. But he also testified Mother paid for his clothing, medical care, and contributed to the purchase of his car, and that he provides his own transportation to school. There was evidence before the court that the overnights did not "alter some of the financial burden of the custodial and noncustodial parents in caring for the children" to the extent a credit was required. We cannot find an abuse of discretion.

■ Father also asserts the trial court did not properly "calculate a split custody child support," partly because it did not grant Father a credit for the overnights addressed above, but also because it abused its discretion when it "gave [Mother] a credit for insurance when the testimony was that [Father] provided insurance for John," (Br. of Appellant at 17), and when it did not include a post-secondary worksheet for John.

As to the former allegation, Father asserts "[g]iving [Mother] a credit for health insurance is contrary to the evidence, given [Father's] testimony that he provided the health insurance for John. (Tr.p.19.)" (Br. of Appellant at 17.) The record before us includes transcripts of two different hearings, and the two are not sequentially numbered. There is nothing on page nineteen of either transcript that supports Father's assertion, or even mentions John. As explained above, we are not obliged to undertake the burden of searching the record and stating Father's case for him. We accordingly decline to scour the nearly two hundred pages of transcript in the record in an attempt to find the evidence on which Father relies, and we therefore cannot address that allegation of error.

As to the latter allegation, Father asserts, "[T]he worksheets attached to the court's order do not include the overnight parenting credit, and on John's worksheet, the post-secondary educational page is not attached, thus there is no way to know what calculations the court used to arrive at the figure for Line J. (Appellant's App. p. 116–123)." (Br. of Appellant at 17.) Nothing in the eight-page span of the rec-

ord to which Father refers us, including the two Child Support Obligation Worksheets found within the eight pages, appears to include a "Line J," nor does father provide a specific enough citation to the record to allow us to determine which worksheet is "John's."

While we are unable to address these allegations as presented by Father due to the deficiencies in his brief, we must remand for clarification as the Child Support Obligation Worksheets attached to the court's order are not signed or verified. We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded. "Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet." *Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind.Ct.App.1992). The trial court's findings do not explain in detail how the court arrived at the amounts it awarded, and the worksheets were improper because they were not signed or verified. *See id.* (basing child support order on unverified and unsigned worksheet was error because use of such a worksheet "has no sanction under either the child support guidelines or the rules of evidence and trial procedure."). We must therefore remand so the trial court may provide more specific findings or signed and verified worksheets.

### 2. *Contempt*

 The trial court correctly found Father in contempt because he "unilaterally modified his child support obligation while waiting for an Order to be issued" by a magistrate, (App. at 118), and he did not pay the arrears that accumulated as a result of the order. Whether a party is in contempt of court is a matter within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. *Norris v. Pethe*, 833 N.E.2d 1024, 1029 (Ind.Ct.App.2005). A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *Mitchell v. Mitchell*, 871 N.E.2d 390, 394 (Ind.Ct.App.2007). When reviewing a determination on contempt matters, we will not reweigh evidence or judge witness credibility. *Id.* We will affirm unless, after a review of the entire record, we have a firm and definite belief that a mistake has been made by the trial court. *Id.*

 Child support obligations in Indiana have long been enforceable by contempt proceedings. *Id.* Contempt is not appropriate unless the parent has the ability to pay the support due and his or her failure to do so was willful. *Id.* Father does not argue he was unable to comply with the pre-modification support order, nor does he explicitly deny that he "unilaterally modified his child support obligation while waiting for an Order to be issued." Father's existing obligation was $650 per month, and Father apparently sought modification.[4] Father says he then "began paying child support of $171.01 per month" based on a child support worksheet he submitted at the modification hearing[5] and on his contribution to one child's college expenses.

Father invites us to hold that a party who disregards an existing court order for payment of child support may avoid contempt by calculating an amount he believes is more appropriate and then paying the

---

4. The pleadings are not included in the record before us, but Father is listed as "petitioner" on the modification order.

5. Father directs us to "(Tr.p.10)" but no such worksheet is there, nor does anything on that page of the transcript have any apparent relevance to Father's child support calculation.

amount he has himself calculated. Father offers no legal support for this premise, and we decline to adopt it. We remind father's counsel that Appellate Rule 46(A)(8)(a) provides: "The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." When a party does not provide argument and citations, its argument is waived for appellate review. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1027 (Ind.Ct.App.2005), *trans. denied* 831 N.E.2d 749 (Ind.2005).

We also find offensive Father's suggestion throughout his argument on this issue that his contempt is the trial court's fault. *E.g.*, "[Father] had no support arrearage until one was judicially created when Magistrate Johnson held the support matter under advisement for nearly one (1) year after the hearing, then made the support modification retroactive...." (Br. of Appellant at 11–12.) *See also id.* at 18: "Did the court abuse its discretion in finding [Father] in contempt when the prior judge failed to rule on the pending petition to modify for over one (1) year when there was a clear modification of support warranted...." (Underlining and bold type removed.)

The trial court did not abuse its discretion when it found Father in contempt.

### 3. *Was Mother's Payment a Gift*

█ The trial court found "Mother made two direct deposits into John's Purdue Account for a total of $4,210.00. Therefore, Mother owes to Father the sum of $1,144.88. All money paid by Mother for Johns [sic] college expenses prior to

the Parties [sic] Mediated Agreement shall be considered a gift." (App. at 118.) Father appears to argue the trial court erred in crediting Mother for that sum while at the same time finding her payment was a gift. We are unable to address that allegation of error.

The mediated agreement was entered in July of 2007, and Father asserts Mother paid the $4,210 in fall of 2005 and spring of 2006. In support of this assertion, Father directs us to "(Appellant's App. p. 151–189)" (Br. of Appellant at 20.) This nearly 40 page span of the record includes a number of documents including records of college expenses for the parties' daughter Lisa, copies of checks written by Father or Mother to Lisa or John, some handwritten notes, summaries of each child's college expenses with no indication who prepared them, various bank account statements, receipts for season football tickets, and other documents with no apparent relevance to this allegation of error.

█ On appeal, it is a complaining party's duty to direct our attention to the portion of the record that supports its contention. *Cmty. Care Ctrs., Inc. v. Ind. Family and Soc. Servs. Admin.*, 716 N.E.2d 519, 530 (Ind.Ct.App.1999), *trans. denied sub nom. Cmty. Care Ctrs., Inc. v. Tioga Pines Living Ctr.*, 735 N.E.2d 229 (Ind.2000). This is mandated by our appellate rules. *See* App. R. 46(A)(8)(a) (the argument "shall contain citations to ... parts of the Record on Appeal relied on...."). The purpose of the rule is to relieve courts of the burden of searching the record and stating a party's case for him. 716 N.E.2d at 530. Although the failure to comply with the appellate rules does not necessarily result in waiver of an issue, it is appropriate where noncompliance impedes our review.[6] *Id.*

---

6. Throughout Father's brief, he offers multiple-page citations to the record, often for one-

We decline Father's invitation to search the record to try and find support for this allegation of error. However, if Father's characterization of the record is correct it does appear Mother might not be entitled to the credit the trial court gave her for the $4,210.00 she deposited into John's Purdue account. We must accordingly instruct the trial court on remand to resolve that apparent inconsistency.[7]

#### 4. *Mark Starting College in Fall 2008*

■ Father asserts Mark was a senior in high school when the first part of the modification hearing took place in July of 2007, and when the hearing concluded in March 2008, the parties knew he would be attending Eastern Michigan University on a full scholarship. Father asserts, without explanation, that the "omission by the court of a support calculation for Mark when all evidence necessary to include such in the order constitutes an abuse of discretion." (Br. of Appellant at 22.)

We are unable to review this allegation of error. Father asserts "[t]he evidence before the court was clear that Mark was starting college in the fall of 2008." (Br. of Appellant at 13.) In support, he directs us to "(Tr.p.16.)" *Id.* Later in his brief, Father offers a citation to the same page to support the statement "[w]hen the hearing was concluded on March 10, 2008, the parties knew that Mark would be attending Eastern Michigan on a full scholarship (Tr. p.16)." As explained above, the record includes transcripts of two different hearings and they are not sequentially numbered. Nothing on page sixteen of either transcript supports Father's assertion, or even mentions Mark. As explained above, we are not obliged to undertake the burden of searching the record and stating Father's case for him.

Even if the record might somewhere include factual support for this allegation of error, Father has provided no cogent argument explaining why the trial court's omission was erroneous, nor has he supported his allegation of error with any citation to legal authority except for two decisions that provide a definition for the phrase "abuse of discretion." This does not comply with our rules, which require that contentions in a brief be supported by cogent reasoning and citations to legal authorities. App. R. 46(A)(8)(a). Thus, these issues are waived. *See, e.g., Davis v.*

---

sentence quotations or references to a single fact. For example, in the same paragraph where he directs us to a nearly forty-page section of the record as support for the single fact Mother made a $4,210 payment, he cites to an eight-page span of the record for what the trial court said in one paragraph of its order. (Br. of Appellant at 20.) This has impeded our review.

7. We are unable to provide further guidance as to how the inconsistency, if the record reflects there is one, should be resolved. Father's argument on this issue is devoid of legal authority except for a reference to *"Kraft, Supra"* (Br. of Appellant at 20) as authority for the abstract definition of abuse of discretion, and a reference to *"Young, Supra,"* (*id.* at 21), as authority for the general proposition that a judgment is clearly erroneous if the evidence does not support a finding.

He has accordingly waived that allegation of error. When a party does not provide cogent argument and citation to legal authority, its argument is waived for appellate review. *Watson,* 822 N.E.2d at 1027.

Father makes only general, and unexplained, assertions the trial court's finding is an "abuse of discretion" because it is "against the logic and effect of the circumstances itself [sic]," (*id.*), and that the "evidence does not support the finding, and the resulting judgment is clearly erroneous." (*Id.* at 21.) He asserts Mother would owe for John's college expenses, at a minimum, "$5,354.88, without any credit," (*id.*), but offers no argument to explain why the trial court should reach that proposed result. In support of that assertion, he directs us to "(Appellant's App. p. . . . . .)." (*Id.*)

*State,* 835 N.E.2d 1102, 1113 (Ind.Ct.App. 2005) (issue is waived where party fails to develop a cogent argument or provide adequate citation to authority), *trans. denied* 855 N.E.2d 994 (Ind.2006).

### 5. *Attorney Fees*

The trial court awarded Mother $2,500 in attorney fees because Father had been in contempt and because the court had to compel discovery. A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only on a showing of a clear abuse of that discretion. *Whited v. Whited,* 859 N.E.2d 657, 665 (Ind.2007). In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. *Id.* Misconduct by one party that causes the opposing party to incur additional costs may also be considered. *McGuire v. McGuire,* 880 N.E.2d 297, 303 (Ind.Ct. App.2008).

As explained above, the contempt finding was proper, and the award of attorney fees is within the trial court's discretion on that basis. As for discovery, Father does not argue he provided discovery without being compelled to do so. Rather, he suggests Mother was to blame: "the discovery issue concerned [Mother's] ongoing attempt to show [Father] had more income than he reported." (Br. of Appellant at 22.) The award of attorney fees was not an abuse of discretion.

### CONCLUSION

We decline to address Father's allegations of error that are not supported with cogent argument, references to the record, or support from legal authorities and we accordingly affirm the trial court. However, we find *sua sponte* that the modification order must be clarified to the extent it did not explain in detail how the court arrived at the amounts it awarded. We therefore remand for clarification of that matter and for resolution of the apparent inconsistency as to the $4,210.00 credit the trial court gave Mother.

Affirmed and remanded.

CRONE, J., and BROWN, J., concur.