**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2013, 6:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN JACOB WARRUM**
Mt. Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL G. CHAMLEE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 65A04-1301-CR-9 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE POSEY SUPERIOR COURT
The Honorable S. Brent Almon, Judge
Cause No. 65D01-1107-FA-344

**July 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Michael G. Chamlee appeals his convictions for dealing in methamphetamine, as a Class A felony; unlawful possession of a firearm by a serious violent felon, a Class B felony; and possession of chemical reagents or precursors, as a Class C felony, following a bench trial. Chamlee presents a single issue for review: whether the trial court erred when it denied his motion to suppress evidence obtained upon execution of a search warrant.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 21, 2011, Posey County Sheriff's Deputy Daniel Montgomery and Detective Jeremy Fortune, Indiana State Trooper Kylen Compton, and Special Agent Chad Foreman of the Bureau of Alcohol, Tobacco, Firearms and Explosives proceeded to Chamlee's residence in Mt. Vernon to execute an arrest warrant on his wife, Joann.[1] Officers had received a report that Joann had committed misdemeanor battery, that there were firearms in the home, that Chamlee was involved in methamphetamine production, and that he owned a pit bull. The officers also knew that Chamlee "was a convicted felon who was in possession of firearms." Supp. Transcript at 24.

The Chamlees' residence was at the end of a long gravel driveway off Hastings Lane. The officers parked at the end of the gravel driveway and walked to the Chamlee residence. When the officers arrived they found Chamlee outside. Special Agent Foreman asked Chamlee if they could talk inside due to the heat of the day, but Chamlee

---

[1] The officers had driven to the residence for the same purpose on July 20, 2011, but the Chamlees were not home.

2

refused unless they had a search warrant. The officers then informed Chamlee that they had a warrant for his wife's arrest. When asked his wife's whereabouts, Chamlee informed the officers that she was inside the residence. The officers knocked repeatedly on the door but received no reply. Special Agent Foreman then asked Chamlee to step inside the residence, ask Joann to come to the door, and secure the dog. Chamlee complied, stepping just in the entryway and remaining within eyesight of the officers. Chamlee brought the pit bull outside and put the dog on a chain, and Chamlee's wife, Joann, came to the door.

When Chamlee's wife exited the residence, she was not wearing shoes. The officers informed her that she was under arrest for misdemeanor battery. Deputy Montgomery asked her if she wished to retrieve some shoes and identification before going to jail, and he suggested that she leave her jewelry at home for safekeeping. Chamlee's wife re-entered the residence accompanied by Deputy Montgomery and Special Agent Foreman. She proceeded toward what officers later learned was the master bedroom but then stopped, began crying, and said she could not find her purse. She found a pair of shoes and exited the residence with the officers. But before he left the residence, Deputy Montgomery saw two long guns leaning on the wall near the door to the master bedroom.

Once outside, Joann asked Chamlee to retrieve her purse. Special Agent Foreman and Deputy Montgomery accompanied Chamlee inside. Chamlee walked directly to the unlit master bedroom. When Special Agent Foreman turned on the bedroom lights, he

saw several small caliber rifles along the wall and long guns against the door frame of the room. After Chamlee found his wife's purse, he and the officers exited the residence.

Once outside, Special Agent Foreman informed Chamlee that he had seen the firearms in the residence and asked Chamlee for consent to search the home. Chamlee refused and again told the officers they would need a search warrant. Special Agent Foreman obtained a warrant to search the residence and outbuildings for firearms. Upon execution of that warrant, the officers found seven long guns, four handguns, and approximately five hundred rounds of ammunition.

The officers also found several items related to the manufacture of methamphetamine while executing the search warrant for firearms. As a result, Detective Fortune obtained a warrant to search the premises for drug-related items ("the second warrant"). Upon execution of the second warrant later that evening, officers found the following items related to the manufacture of methamphetamine: organic solvents, five cylinders of anhydrous ammonia, camp fuel, muriatic acid, a hot plate, liquid fire, sulfuric acid, coffee filters, a pickle jar containing an active pill reaction, over 1000 pseudoephedrine pills, lithium batteries, hydrochloride gas, glass jars, tubing, clear wrap, a bug sprayer, HCL generators, and three drug ledgers. And inside two safes in the master bedroom, officers found a total of 3.48 grams of methamphetamine.

The State charged Chamlee with dealing in methamphetamine, as a Class A felony; unlawful possession of a firearm by a serious violent felon, a Class B felony; possession of chemical reagents or precursors with intent to manufacture a controlled substance, as a Class C felony; and two counts of possession of methamphetamine, as

Class C felonies. Chamlee filed a motion to suppress, which the trial court denied after a hearing.[2] We denied Chamlee's request for leave to file an interlocutory appeal.

Following a bench trial, the court found Chamlee guilty on all counts but entered judgment of conviction only on dealing in methamphetamine, as a Class A felony; possession of a firearm by a serious violent felon, a Class B felony; and possession of chemical reagents or precursors, as a Class C felony. The trial court sentenced Chamlee to thirty-two years on the first count, twelve years on the second count, and four years on the third count, to be served concurrently. Chamlee now appeals.

## DISCUSSION AND DECISION

Chamlee first challenged the admission of evidence through a motion to suppress but now appeals following a completed trial. Thus, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. Lanham v. State, 937 N.E.2d 419, 421-22 (Ind. Ct. App. 2010). A trial court is afforded broad discretion in ruling upon the admissibility of evidence, and we will reverse such a ruling only when the defendant has shown an abuse of discretion. Id. at 422. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. We do not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. Id.

Chamlee contends that the officers violated his rights pursuant to the Fourth Amendment by entering his residence without a warrant.[3] Therefore, he argues, the

---

[2] Chamlee has not included a copy of his motion to suppress or the order denying that motion in the record on appeal.

5

evidence seized during the subsequent search executed under search warrants, which were issued based on what officers had observed inside when they had accompanied the Chamlees, should have been excluded at trial. We cannot agree.

We initially observe that Chamlee does not allege in his brief that he preserved the issue for review by lodging timely objections at trial to the admission of the evidence obtained as a result of the searches conducted under the warrants. But a party must object to the evidence when it is offered into the record in order to preserve any alleged error for review. See Perez v. Bakel, 862, N.E.2d 289, 295 (Ind. Ct. App. 2007). And an appellant has an obligation to show that the error has been preserved. We remind Chamlee's counsel that we are not obligated to search the record to find support for Chamlee's arguments. See Vandenburgh v. Vandenburgh, 916 N.E.2d 723, 726 n.2 (Ind. Ct. App. 2009). Nevertheless, we prefer to decide cases on the merits. Id. The State offered into evidence more than seventy exhibits. A brief review of the table of contents to the trial transcript shows that Chamlee objected each time the State offered an exhibit or set of exhibits into evidence. Thus, we consider whether the trial court abused its discretion when it admitted the evidence obtained as a result of the search warrants.

Chamlee contends that the trial court should not have admitted into evidence the items obtained as a result of the search of his residence and outbuildings. In particular, he argues that the officers' warrantless entry into his home, when they accompanied

---

[3] Chamlee also contends that the searches were illegal under Article I, Section 11 of the Indiana Constitution. But Chamlee does not support that argument with separate analysis under the state constitution. Failure to make a cogent argument under Article I, Section 11 constitutes waiver of the issue on appeal. See Ind. Appellate Rule 46(A)(8)(a); Micheau v. State, 893 N.E.2d 1053, 1059 n.8 (Ind. Ct. App. 2008), trans. denied.

6

Joann and when they first observed the contraband, constituted an illegal search.[4] Thus, he continues, the search warrants and the items discovered upon their execution are inadmissible under the fruit of the poisonous tree doctrine. We cannot agree.

Our decision in Smith v. State, 505 N.E.2d 81 (Ind. Ct. App. 1987), is instructive. There, officers received a reliable report that marijuana was being sold from a residence. After officers saw Smith carrying two baggies of suspected marijuana from the residence and enter a car, they arrested Smith and the other occupants of the car. When Smith asked to retrieve his jacket from his bedroom in the residence, officers accompanied him inside. Smith used a key to enter the residence and retrieved his jacket from a bedroom. In Smith's bedroom, officers observed small envelopes and plastic bags containing suspected marijuana on the bed. Laboratory tests revealed that the baggies recovered from Smith and from the bed contained a total of 65.8 grams of marijuana.

Smith argued that the discovery of the marijuana in his bedroom was the fruit of an illegal search. We disagreed.

> It is settled law that objects observed in plain view by a police officer who is lawfully in a position to have such a view are not products of a "search" within the meaning of the Fourth and Fourteenth Amendments. The officers lawfully approached the vehicle and made no search to obtain the evidence. Rather, the officers observed the marijuana in open view as Smith left the house and subsequently placed it on the automobile's console. The ready conclusion is that the marijuana was properly seized and admitted into evidence.

> The trial court also properly admitted the marijuana seized from Smith's bedroom. Following the arrest, Smith asked permission to return to the house so he could get a jacket. Once inside, Smith directed Fisher to

---

[4] Chamlee does not specify which entry by the officers he contests based on the Fourth Amendment argument. We consider only the entry with Joann, because, as explained below, the officers observed the firearms in plain view during that entry. As such, the officers had an articulable suspicion to support a search warrant after that entry.

an upstairs bedroom where Smith said his jacket could be found. As Fisher walked into the room, he saw the envelopes and plastic bags containing suspected marijuana on top of the bed.

Fisher and the other officers were authorized to accompany Smith into the house for the purpose of retrieving his jacket. Although Smith did not orally consent to the officers' initial entry, the United States Supreme Court recognized in Washington v. Chrisman (1982), 455 U.S. 1, [6-7], 70 L. Ed. 2d 778, 102 S. Ct. 812, that:

> The absence of an affirmative indication that an arrested person might have a weapon available or might attempt to escape does not diminish the arresting officer's authority to maintain control over the arrested person . . . .
>
> Every arrest must be presumed to present a risk of danger to the arresting officer . . . . There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious . . . .
>
> We hold, therefore, that it is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to insure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.

Smith, 505 N.E.2d at 83-84 (some citations omitted).

The present case is analogous to the facts in Smith. Here, the officers had arrested Chamlee's wife before she went inside to retrieve her identification and shoes. Chamlee does not argue, and there is no indication in the record, that the offer to allow her to retrieve those items and leave her jewelry there were a subterfuge to perform a warrantless search. Under Smith and Chrisman, the officers' escort of Joann into the residence did not constitute an unlawful search. As such, items observed in plain view

8

during this entry of the residence constituted probable cause for the subsequent search warrant for firearms. And the drug manufacturing paraphernalia observed during the execution of the first search warrant constituted probable cause for the second search warrant. Chamlee's argument that items recovered under either search warrant were inadmissible as fruit of the poisonous tree must fail.

Chamlee's arguments under the consent, plain view, and officer safety doctrines fail under the rule applied in Smith and Chrisman. As such, Chamlee has not shown that the trial court abused its discretion when it admitted evidence obtained upon execution of the search warrants. We affirm Chamlee's convictions.

Affirmed.

BAILEY, J., and BARNES, J., concur.