## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Robert E. Shive
Hollingsworth & Zivitz, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.C. and K.C., Children in Need of Services, and

J.S. (Mother) and M.S. (Stepfather),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

January 29, 2016

Court of Appeals Case No. 54A05-1506-JC-568

Appeal from the Montgomery Circuit Court

The Honorable Harry A. Siamas, Judge

Trial Court Cause Nos. 54C01-1409-JC-203, -205

**Crone, Judge.**

## Case Summary

[1]    J.S. ("Mother") and M.S. ("Stepfather) appeal the trial court's adjudication of minor children J.C. and K.C. as children in need of services ("CHINS"). The sole restated issue for our review is whether sufficient evidence supports the trial court's determination that the children are CHINS pursuant to Indiana Code Sections 31-34-1-1 and -3. Finding the evidence sufficient, we affirm.

## Facts and Procedural History

[2]    In September 2014, the Montgomery County Department of Child Services ("DCS") filed CHINS petitions regarding J.C. and K.C. after K.C. reported that Stepfather had been molesting her since she was seven years old and that he had physically abused J.C. The children were removed from the home and subsequently placed in the care of Father on September 28, 2014. In November 2014, DCS filed amended petitions after J.C. reported that he had been both physically and sexually abused by Stepfather. Factfinding proceedings were held on January 15, February 12, and March 13, 2015. In its order dated March 31, 2015, the trial court made the following relevant findings of fact:[1]

---

[1] The trial court's order refers to the parties by their full names. We use "Mother," "Stepfather," "Father," and initials where appropriate.

1. J.C. was born on January 12, 2002. His parents are Mother and Father.

2. K.C. was born December 17, 1999. Her parents are Mother and Father.

3. J.S. was born November 2, 2006. His parents are Mother and Stepfather.

4. Mother and Stepfather met and began living together in 2005 when they lived in Florida. For the most part all three children lived with Mother and Stepfather except for brief periods when K.C. and J.C. lived with their father. The family relocated to Indiana in 2012. Mother and Stepfather married in June 2014. Both Mother and Stepfather worked in teaching positions in Florida and Indiana.

5. The Florida Department of Families and Children investigated alleged physical abuse of K.C. or J.C. on three occasions. None of these reports were substantiated although family services were recommended more than once.

6. Mother admittedly delegated all responsibility for disciplining the children to Stepfather. K.C. and J.C. resented Stepfather's discipline of them and this continued to be a source of conflict within the family.

7. K.C. testified that Stepfather had sexually molested her on many occasions for many years both in Florida and Indiana. K.C. has repeated these allegations to various people, in her deposition, and while testifying during the fact finding hearing. While her reports and testimony have inconsistencies in some details and she seems to have remembered more incidents of molestations since her first report in September 2014 the Court finds her to be credible. Stepfather touched K.C.'s breasts, vagina and buttocks inappropriately both in Florida and Indiana. The last touching occurred in 2014. K.C. told her mother that

Stepfather molested her. Mother did not believe her. At the time of the hearing both Mother and Stepfather continue to deny that Stepfather molested K.C.

8. As the result of K.C.'s traumatic experiences she has demonstrated self-harming behaviors including cutting, suicide ideation, depression, anxiety, low self esteem, confusion about her relationship with her mother, and she is at risk for substance abuse. She feels powerless and hopeless. K.C. needs intensive mental health treatment to address the emotional and psychological problems related to the trauma.

9. Mother has had only one contact with K.C. or J.C. since the DCS took the children into protective custody in September 2014. Mother does not want to reunite with K.C. and does not appear to be motivated to reunite with J.C. either.

10. Stepfather has subjected J.C. to inappropriate discipline on several occasions. J.C. is a hemophiliac and bruises easily. Stepfather has hit or shoved J.C. with his hands in Indiana.

11. Father admits that J.C. and K.C. need services that he does not believe that he can provide, and he believes that the DCS should remain involved with the children so that K.C. and J.C. can continue to receive mental health treatment in order to address the issues that are troubling both children.

12. The DCS removed K.C. and J.C. from Mother in September 2014 and both children were placed with Father who lives in Illinois. Thereafter Father obtained legal custody of K.C. and J.C.

13. Both J.C. and K.C. require services including mental health treatment in order to deal with issues of trauma, abuse and separation from their mother, as well as other mental health issues.

Appellants' App. at 52-54.

[3] Based upon these findings of fact, the trial court determined that DCS proved by a preponderance of the evidence that J.C. and K.C. were CHINS pursuant to Indiana Code Sections 31-34-1-1 and -3. Specifically, the court concluded that the preponderance of the evidence supports that K.C. was molested while in Mother's care and that Mother would not protect her from future abuse. The court further concluded that the preponderance of the evidence supports that J.C. was physically abused while in Mother's care and that Mother would not protect him from future abuse. The trial court found that "Mother is totally aligned with [Stepfather] and against her two older children" and that "Mother does not want the older children back in her home." *Id*. at 56-57. Accordingly, the court adjudicated J.C. and K.C. as CHINS and ordered that they remain in the placement with Father until further order of the court.[2] Mother and Stepfather now appeal.[3]

# Discussion and Decision

[4] Mother and Stepfather contend that the evidence is insufficient to support the trial court's adjudication of J.C. and K.C. as CHINS. Indiana courts recognize

---

[2] As found by the trial court, Father admitted that J.C. and K.C. were CHINS and requested that DCS stay involved with the children so that they can receive the therapy and counseling they need. He does not participate in this appeal.

[3] Although a CHINS petition was also filed regarding the minor child J.S., the trial court determined that DCS failed to prove by a preponderance of the evidence that J.S. was a CHINS, and thus dismissed the petition as to him. Neither party appeals that determination.

that parents have a fundamental right to raise their children without undue influence from the State, but that right is limited by the State's compelling interest in protecting the welfare of children. *In re Ju.L.*, 952 N.E.2d 771, 776 (Ind. Ct. App. 2011). A CHINS proceeding is a civil action in which the State bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010); Ind. Code § 31-34-12-3.

Here, the trial court adjudicated the children as CHINS pursuant to Indiana Code Sections 31-34-1-1 and -3. To meet its burden of establishing CHINS status pursuant to Indiana Code Section 31-34-1-1, DCS must prove that the child is under age eighteen and that

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Indiana Code Section 31-34-1-3(a) and -(b) provide in relevant part that a child is a CHINS if the child is under age eighteen and the victim of an enumerated

sex offense[4] or lives in the same household as another child who is the victim of an enumerated sex offense and, "the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court." Our supreme court has noted that the fact that a child's needs are unlikely to be met without coercive intervention is perhaps the most critical of the considerations when determining whether the State's intrusion into the ordinarily private sphere of the family is warranted. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[7] When reviewing the sufficiency of the evidence to support a CHINS adjudication, we will not reweigh the evidence or judge witness credibility. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). We will consider only the evidence favorable to the trial court's judgment and the reasonable inferences drawn therefrom. *Id.* Because no statute expressly requires formal findings in a CHINS factfinding order, and because it appears that neither party in this case requested them pursuant to Indiana Trial Rule 52(A), as to the issues covered by the court's sua sponte findings, we will determine whether the evidence supports the findings and whether the findings support the judgment. *S.D.*, 2 N.E.3d at 1287. We review the remaining issues under the general judgment standard, and we will affirm the judgment if it can be sustained on any legal theory supported by the evidence. *Id.*

---

[4] Here, the trial court found by a preponderance of the evidence that K.C. was a victim of child molesting. *See* Ind. Code § 35-42-4-3.

[8] Mother and Stepfather argue that "the weight of the evidence does not support the judgment" that J.C. and K.C. are CHINS. Appellants' Br. at 24. The crux of their argument is that, absent any physical or medical evidence to substantiate the sexual abuse allegations against Stepfather, the evidence is insufficient to support a CHINS adjudication pursuant to Indiana Code Section 31-34-1-3. More precisely, they assert that "inconsistencies" in K.C.'s various accounts of sexual abuse demonstrate that her testimony regarding the abuse was not credible and cannot support, by a preponderance of the evidence, the trial court's conclusion that Stepfather molested K.C. *Id*. at 29.

[9] First, we note that Mother and Stepfather cite no authority, and we are unaware of any, that requires DCS to present physical or medical evidence to support sexual abuse allegations in a CHINS proceeding. Moreover, our review of the record reveals that K.C.'s testimony during factfinding was copious, graphic, and heart-wrenching regarding the molestations perpetrated by Stepfather. The trial court specifically noted that although K.C.'s prior reports of the sexual abuse and her testimony have "inconsistencies in some details" the court found her to be "credible." Appellant's App. at 53. We interpret the entirety of Mother and Stepfather's argument as an invitation for this Court to reweigh the evidence and reassess witness credibility, which we may not do. DCS presented sufficient evidence to support the trial court's determination that K.C. was the victim of a sex offense as required by Indiana Code Section 31-34-1-3.

[10] Mother and Stepfather also maintain that the trial court's findings are "insufficiently articulated" and too vague to support CHINS adjudications under either Indiana Code Section 31-34-1-1 or -3 because the court did not specifically delineate the statutory "subsection applied," "the elements of the subsection" that were met, or "the specific facts found to qualify K.C. and J.C. as children in need of services." Appellants' Br. at 31-32. We could not disagree more. We reiterate that the trial court here was not required to make specific findings at all, much less with the specificity urged by Mother and Stepfather. *See S.D.*, 2 N.E.3d at 1287. In any event, the trial court cited both applicable statutes and made adequately detailed factual findings regarding the sexual abuse suffered by K.C. and the physical abuse suffered by J.C. at the hands of Stepfather, as well as the severe emotional trauma experienced by the children as a result. The court made further findings regarding Mother's refusal to intervene to protect the children despite her knowledge of the abuse. Indeed, the court found that Mother continues to disbelieve that Stepfather has ever molested, abused, or endangered J.C. and K.C. Based upon our review of the record as a whole and the evidence most favorable to the judgment, there is little question that, pursuant to both Indiana Code Sections 31-34-1-1 and -3,

J.C. and K.C. need care, treatment, or rehabilitation that is unlikely to be provided or accepted without the coercive intervention of the court.[5]

[11] In sum, sufficient evidence supports the trial court's findings, and those findings support the trial court's CHINS adjudication. The judgment of the trial court is affirmed.

[12] Affirmed.

Vaidik, C.J., and Bailey, J., concur.

---

[5] We are unpersuaded by Mother and Stepfather's claim that the coercive intervention of the court was unnecessary here because, by the time of the factfinding hearing, Father had been granted legal and physical custody of J.C. and K.C. pursuant to a modified dissolution decree between Mother and Father. *See S.D.*, 2 N.E.3d at 1290 (CHINS finding should consider the family's condition not just when the case is filed, but also when it is heard). First, Mother and Stepfather fail to direct us to any evidence to support their claim, and we will not search the record on their behalf. Therefore, the argument is waived. *See Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 729-30 (Ind. Ct. App. 2009) (it is a complaining party's duty pursuant to Ind. Appellate Rule 46(A)(8)(a) to direct our attention to the portion of the record supporting his contention; the purpose of the rule is to relieve courts of the burden of searching the record and stating a party's case for him; waiver is appropriate where noncompliance with appellate rules impedes our review). Waiver notwithstanding, Father admitted that J.C. and K.C. were CHINS, and regardless of the alleged custody arrangement, the evidence supports the trial court's conclusion that the coercive intervention of the court is necessary to ensure that the children continue to receive the needed mental health therapy and counseling that Father stated he is financially unable to provide.