# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 06 2019, 10:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

**APPELLANT PRO SE**

Kenneth R. Sumner
Avon, Indiana

**ATTORNEY FOR APPELLEE**

Denise F. Hayden
Indianapolis, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

Kenneth R. Sumner,

*Appellant-Respondent,*

v.

Loree A. Wheeler,

*Appellee-Petitioner*

May 6, 2019

Court of Appeals Case No.
18A-DR-2070

Appeal from the Hendricks
Superior Court

The Honorable Rhett M. Stuard,
Judge

Trial Court Cause No.
32D02-0912-DR-162

---

**Altice, Judge.**

### Case Summary

[1] Kenneth R. Sumner (Father) and Loree Wheeler (Mother) have two children together. Following their divorce in 2010, the parties effectively coparented for a number of years and shared equal parenting time. In 2018, Mother sought

modification of custody, parenting time, and child support. Father represented himself at the modification hearing. The trial court ultimately modified physical custody, parenting time, and child support as requested by Mother but left legal custody to be shared jointly by the parties. On appeal, Father presents three issues: (1) whether Father was unconstitutionally precluded from presenting his entire case due to time constraints; (2) whether the trial court improperly denied a motion to continue; and (3) whether the trial court abused its discretion in modifying child support.

[2] We affirm.

### Facts & Procedural History

[3] Mother and Father married in February 1999 and two children were born of the marriage.[1] Mother filed for dissolution of marriage on December 31, 2009. Thereafter, the parties entered into an agreement regarding property settlement, custody, and support, which was approved by the court and incorporated in the decree of dissolution on June 4, 2010 (Decree). Pursuant to the Decree, the parties were granted joint legal and physical custody of the children, and Father was ordered to pay $120 per month in child support through the Hendricks County Clerk's Office.

---

[1] Their daughter was born in February 2003, and their son was born in August 2005.

[4] Mother and Father coparented well together for a number of years, and they each remarried. During Father's second marriage and thereafter, he experienced some instability. Mother and Father worked together and mutually agreed to temporary modifications of parenting time and child support. After Father's second divorce, he did not have a home in which to exercise overnights. Thus, beginning in February 2017, the children spent all overnights with Mother. Father expected that this would go on for a few months, but it ended up lasting much longer.

[5] Accordingly, the parties eventually filed a Temporary Custody Agreement (Temporary Agreement) with the court, which they had prepared without the benefit of counsel. The Temporary Agreement provided that Mother would have full physical and legal custody of the children, with Father exercising parenting time with no overnights, until Father obtained a permanent residence. The Temporary Agreement was expressly entered into to "give the kids stability and mother peace of mind." *Appellee's Appendix* at 18. It provided that "once Father has a permanent place of residence, they will revert back to shared physical and legal custody of the children and Father will resume overnight parenting time. Once Father obtains a residence, the parties will file another agreement on custody/parenting time and return to equally shared custody." *Id.* The trial court approved the Temporary Agreement on December 20, 2017.

[6] Father married his third wife on February 18, 2018, and they moved into a new home the following month. Father began to resume overnight parenting time in

the spring of 2018, but the parties' commitment to coparent effectively deteriorated significantly over the next several months.

[7] On April 6, 2018, Mother filed her Verified Petition for Modification of the Decree as to Parenting Time, Custody, and Child Support. Mother indicated that she no longer believed equal shared custody was in the children's best interests. Thus, among other things, Mother sought modification of the Decree to provide Father with parenting time pursuant to the Indiana Parenting Time Guidelines (the Guidelines). The trial court scheduled a modification hearing for July 19, 2018, which was later rescheduled for July 26, 2018.

[8] On May 7, 2018, Father filed a handwritten Motion for Update of Custody Agreement/Return to Equal Custody. Father referenced the provision in the Temporary Agreement setting out that once he obtained a permanent residence, the parties would file "another agreement on custody/parenting time and return to equally shared custody." *Id*. In his motion, Father alleged that Mother had refused to "update the court accordingly" after he obtained a permanent residence in March 2018. *Id*. at 23. Mother responded to Father's motion and requested the appointment of a guardian ad litem (GAL). The trial court appointed Ann Knotek as GAL on May 11, 2018. GAL Knotek filed her confidential report with the trial court on July 19, 2018.

[9] The modification hearing, which was set for three hours, began on the morning of July 26, 2018. Mother was represented by counsel, and Father represented himself. In her case in chief, Mother called three witnesses – Father (briefly),

GAL Knotek, and herself – in just over two hours.[2] Father gave a short explanation after his testimony and also cross-examined GAL Knotek. He did not cross-examine Mother.

[10] At the beginning of his case in chief, Father noted that he would likely go beyond the time originally set for the hearing. The trial court responded, "we have at least a half hour left, let's see where we get and I'll make a decision at that time." *Transcript* at 89. Over the next hour, Father presented his own testimony in narrative form. Noting the noon hour, the trial court confirmed that Father still had much more to cover and inquired of Mother's counsel if he could come back after lunch. Counsel indicated that he would make himself available and would also waive cross-examination if necessary. Before breaking for lunch, the court instructed the parties to be back at 1:00 p.m. and stated, "I'm going to give another hour and that's it, okay. So however it's used up is how it's used up and then I'm going to make my decision, okay." *Id*. at 122.

[11] Father continued with his direct testimony after the lunch break, noting that he was "trying to consolidate" and go "much faster". *Id*. at 123. He spoke for about another thirty minutes and then ended his testimony with the following summary:

> I mean there's way more hours that we don't have so, uh, I think for now I'll rest there just for the final comment that, again, I'm in agreement with the GAL's, uh, suggestions and I'm happy to –

---

[2] Mother's case in chief, including Father's cross-examination, took place between 8:45 a.m. and 10:53 a.m.

to do it the way she wants with that program they have, the schedules or even also to have a, uh, parenting coordinator, I think is what they call it, I'd be fine with that. I won't fight with any of it and I – I think, hopefully, I've proved today, I don't know if I've proved it on a lot of proof or testimonies but through my testimony today, hopefully, you can see that, uh, I'm – I'm a good father. I'm an involved father. Uh, and uh, I – I don't see any reason for changing the fifty/fifty arrangement.

*Id*. at 136. After a short cross-examination by Mother's counsel, Father provided brief testimony on redirect. He then concluded his testimony: "I'm afraid rambling will just get me in all these places I've already been so, I don't want to take any more of your time but, uh, I suppose if [Mother's counsel] says other things, I'd … respond at that time." *Id*. at 152. At the conclusion of his testimony, Father did not call any additional witnesses. The parties then presented closing statements, and the trial court took the matter under advisement.

[12] On July 31, 2018, the trial court issued its order modifying custody, parenting time, and support. The court gave the parties joint legal custody and ordered them to utilize the services of a parenting coordinator to resolve disputes before filing motions with the court. The court granted Mother primary physical custody of the children and Father parenting time, at a minimum, pursuant to the Guidelines. The court also ordered Father to pay weekly child support in the amount of $197 per week. Father now appeals. Additional information will be provided below as needed.

## Discussion & Decision

## 1. Time Constraints

Father, now represented by counsel, suggests that his due process rights[3] were violated at the hearing because he was not allowed to present his entire case due to time constraints. In this regard, Father asserts that Mother was afforded two-thirds of the time to present her case, leaving him only one-third of the time to present his case.

There is no doubt Mother used more time to present her case, but the disparity is not as great as that suggested by Father. Moreover, a thorough review of the record reveals that the trial court was patient with Father throughout his self-representation and did not cut off Father during his testimony. The trial court provided more time for Father and encouraged him to manage this time wisely. Father concluded his testimony without prompting from the trial court and then did not seek to call any additional witnesses[4] or otherwise present more evidence. In sum, Father rested his case on his own narrative testimony, which took place over about one and one-half hours of the hearing.

Father chose to represent himself at the hearing. As a pro-se litigant he is held to the "same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). "One of the risks that a defendant takes when he

---

[3] Father generally directs us to Article 1, § 12 of the Indiana Constitution in support of this argument.

[4] In fact, Father testified that he "didn't bring witnesses today." *Transcript* at 130.

decides to proceed pro se is that he will not know how to accomplish all of the things that an attorney would know how to accomplish." *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*. In this case, Father had control over how he managed his time, whom he called as witnesses, and whether he would cross-examine witnesses. The trial court did not unconstitutionally curtail the presentation of Father's case.

### 2. Continuance

[16] Father asserts that he made an oral motion to continue the hearing and that the trial court abused its discretion by denying the motion. This argument is disingenuous because Father never actual moved to continue the hearing. He simply indicated, "I may request a continuance". *Transcript* at 90. Further, Father indicated that the basis of his possible motion would be that the GAL did not file her report at least ten days before the hearing as required by Ind. Code § 31-17-2-12(c). Contrary to his assertion on appeal, Father did not claim that he had insufficient time to prepare to challenge the GAL's report and testimony. In fact, Father testified that he was essentially in agreement with the GAL's recommendations.

[17] To the extent Father's statement can be viewed as a motion for a continuance, such a request was untimely. The GAL had already testified regarding the report, been cross-examined by Father, and been released. The time had come and gone to seek a continuance based on the timeliness of the GAL's report. *See In re Paternity of M.J.M.*, 766 N.E.2d 1203, 1207-08 (Ind. Ct. App. 2002)

("Mother failed to show that she was free from fault and that her rights were prejudiced by the denial" where, in part, she failed to move for a continuance before the start of the hearing, despite being aware of the report, and never objected to the custody evaluator's report being admitted into evidence).

### 3. Child Support

[18] Finally, Father challenges the trial court's modification of child support. He claims that the trial court "abused its discretion when it relied upon evidence that was too speculative to impute weekly gross income to Father of $1,000" per week. *Appellant's Brief* at 14. Specifically, he notes that Mother's proposed child support worksheet was unsigned and, therefore, could not properly be the basis of the trial court's support order.

[19] Decisions regarding child support generally rest within the sound discretion of the trial court. *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009). We will reverse such a determination only if there has been an abuse of discretion or the trial court's determination is contrary to law. *Id*.

[20] Father directs us to cases in which this court has held that the trial court's reliance on an unsigned and unverified support worksheet was error.[5] *See Vandenburgh*, 916 N.E.2d at 728 ("worksheets were improper because they were

---

[5] Father also cites and relies heavily on a memorandum decision issued by this court. Ind. Appellate Rule 65(D) clearly provides that such a decision "shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case." Father's appellate counsel shall take note of this rule for future cases.

not signed or verified"); *Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind. Ct. App. 1992) (basing child support order on unverified and unsigned worksheet was error because use of such a worksheet "has no sanction under either the child support guidelines or the rules of evidence and trial procedure").

[21] Here, although modification of child support was clearly one of the issues to be addressed at the hearing, neither Father nor Mother provided the trial court with a verified worksheet. Mother, however, testified in some detail regarding her (unsigned) proposed worksheet, which was admitted into evidence as Exhibit 33. In addition to not objecting to this exhibit or Mother's admittedly speculative testimony regarding Father's income,[6] Father did not cross-examine Mother regarding this evidence or present contrary evidence during his own lengthy testimony. Father testified that he is a realtor and part-time minister and implied that he is in a better place financially than in the past, but he offered no evidence concerning his current income.

[22] The trial court relied on Mother's testimony and Exhibit 33, as that was the only evidence admitted regarding Father's income. Additionally, Mother offered testimony and Exhibit 22 (the Schedule C from her 2017 federal tax return) to support the income figure she used for herself in the proposed

---

[6] During her testimony, Mother addressed the $1000 weekly income figure used for Father in her proposed worksheet. She acknowledged that she did not know exactly what Father earned but "would guess" that it was around $52,000 a year. *Transcript* at 85.

worksheet.[7]  Although trial courts should require verified child support worksheets in *every* case, we conclude that Father's failure to produce a worksheet or any evidence in this regard, his failure to object to Exhibit 33 or Mother's related testimony, and his tacit agreement to proceed without a verified worksheet constituted a waiver of his right to appeal the trial court's support order.  *See Butterfield v. Constantine*, 864 N.E.2d 414, 417 (Ind. Ct. App. 2007) (father waived his right to appeal the trial court's support order that relied exclusively on an exhibit presented by mother without a verified worksheet).

[23]  Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.

---

[7] Father also argues, without any supporting authority, that the trial court abused its discretion by not imputing additional income to Mother "to make up for her apparent voluntary underemployment". *Appellant's Brief* at 14.  He baldly suggests that the trial court should have inquired "as to why Mother is no longer earning or capable of earning weekly gross income of $961.00" as she was at the time of the Decree. *Id*. at 15.  This type of inquiry was up to Father, not the trial court, and Father wholly failed to raise the issue below.  Accordingly, he cannot now be heard to complain.