Leslie Gail COBB, Appellant–Petitioner,

v.

Rodney Allan COBB, Appellee–Respondent.

No. 32A05–9108–CV–257.

Court of Appeals of Indiana, Fifth District.

March 24, 1992.

Pamela Y. Rhine and William W. Knowles, Knowles & Associates, Carmel, for appellant-petitioner.

Eric C. Jodka, Indianapolis, for appellee-respondent.

SHARPNACK, Judge.

Leslie Cobb appeals the trial court's determination of Rodney Cobb's child support obligation. We reverse and remand with instructions.

Leslie states one issue for review, which we restate as whether the trial court properly followed the Indiana Child Support Guidelines.

The facts relevant to this appeal are as follows. Leslie and Rodney Cobb had two sons during their seven-year marriage. On October 19, 1990, Leslie petitioned for dissolution of the marriage. In an emergency hearing held on November 5, the court awarded Leslie preliminary custody of the children and ordered Rodney to pay $165.00 a week in child support. The court determined Rodney's support obligation pursuant to a child support obligation worksheet, which both Leslie and Rodney had signed. That worksheet showed that Rodney's weekly gross income was $678, that he was providing health insurance with a weekly premium of $26 for the children and that Leslie's weekly gross income was $0.

On March 11, 1991, Leslie filed a verified financial declaration stating that her weekly income had become $290.00 and that she was paying both the children's weekly health insurance premiums of $31.50 and weekly work-related child care costs of $75.00. At the final hearing on April 11, Rodney testified that his annual income amounted to $37,200.00 ($715.39 a week) and indicated that he had no reason to doubt that Leslie's income was $290 a week. Also at the final hearing, Leslie submitted for the court's consideration a child support worksheet, which only she had signed, indicating that her gross weekly income was $290.00, that Rodney's weekly gross income was $712.00, that Leslie paid weekly health insurance premiums for the children in the amount of $31.00, and that weekly work-related child care costs amounted to $85.00.[1] According to Leslie's calculations, Rodney's child support obligation totalled $224.00 a week pursuant to the child support guidelines.

On April 18, the court entered findings and ordered Rodney to pay $165.00 a week in child support and Leslie to pay the children's health insurance premiums. The findings and order stated no basis for the court's determination that Rodney's child support obligation should amount to $165.00 a week.

On April 30, Leslie filed a motion requesting the court to amend its order and require Rodney to pay the guideline amount of $224.00 a week, as calculated on the worksheet she had submitted at trial. On May 13, Rodney responded to Leslie's motion and to the trial court's preliminary indication of an intent to grant Leslie's motion by filing a child support worksheet, not signed or verified by anyone, indicating that his weekly gross income amounted to only $628.00 instead of $715.39 as his testimony at the final hearing had established. In addition, Rodney's worksheet indicated that no amount had been considered either for Leslie's payment of the children's health insurance premiums or for her work-related child care costs. Using the new figures, Rodney calculated that his child support obligation actually amounted to only $155.40 a week. On May 21, the court entered an order reducing Rodney's child support obligation from $165.00 a week to $155.40 a week.

On appeal, Leslie argues that the trial court was required either to order Rodney to pay the presumptive guideline amount of $224.00 a week in child support or to articulate reasons for deviating from the Guidelines. We agree in part and disagree in part.

■■■■ The Indiana Supreme Court adopted the Child Support Guidelines for use in all child support determinations

---

1. Although Leslie's worksheet was marked for identification purposes as Exhibit 4 and offered for the court's consideration, the record indicates that it was not entered into evidence.

made after October 1, 1989.[2] Commentary, Ind. Child Support Guideline 1. Support awards determined by application of the guidelines are presumptively correct. Ind. Child Support Rule 2; *Gielsdorf-Aliah v. Aliah* (1990), Ind.App., 560 N.E.2d 1275, 1276. The parent who seeks deviation from the guideline support calculation must present evidence rebutting the presumptive amount as unjust or inappropriate under the circumstances. *Gielsdorf-Aliah,* 560 N.E.2d at 1275. A trial court may, in its discretion, deviate from the presumptive amount specified by the guidelines if application would result in an unjust award. Child Supp.R. 3; *Carter by Carter v. Morrow* (1990), Ind.App., 563 N.E.2d 183, 185. We will affirm the trial court's order unless it is "clearly erroneous." *Humphrey v. Woods* (1991), Ind., 583 N.E.2d 133. However, when the trial court deviates from the presumptive amount, it must "enter a written finding articulating the factual circumstances supporting that conclusion." *Carter,* 563 N.E.2d at 185; Ind. Child Supp.R. 3.

Leslie argues first that the trial court erred by basing its child support order on an unverified and unsigned child support worksheet. We agree.

Pursuant to Child Supp. G.3(B),

"A copy of the [accompanying child support worksheet] shall be submitted to the court in each case in which the court is asked to determine support ... and *worksheets shall be signed by both parties,* not their counsel, under penalties for perjury.

Income statements of the parents should be verified with documentation of both current and past income. Suitable documentation of current earnings includes paystubs, employer statements, or receipts and expenses if self-employed. Documentation of income may be supplemented with copies of tax returns."

(emphasis added)

■ In our review, we must start with the observation that our trial courts are required to make support orders in compli-

ance with the guidelines and to spell out the reasons for any support orders which deviate from the guideline results. We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded. Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet.

■ The order entered after the final hearing in this case provides no clue as to how the court determined that Rodney should pay $165 a week in child support. The most likely sources for this amount would be either the initial, jointly signed worksheet filed by the parties at the emergency hearing on November 5 or the court's provisional order for support in the same amount. However, both Rodney's testimony to a higher income and Leslie's declaration of increased income during the final hearing on April 11 clearly superseded the information contained in the parties' original worksheet. While those two changes alone would produce a figure different from $165 a week pursuant to our child support guidelines, the record also indicates both that Leslie provided a worksheet at the final hearing showing both that she was now paying the children's health insurance at a premium of $31.00 a week and that the trial court had ordered Leslie to maintain health insurance for the children.

The requirement of income verification set out in Child Supp. G.3(B) represents a suggestion to the judges that they exercise some care in determining the income of each parent. Commentary, Child Supp. 3(B). We do not find that the trial court here exercised such care. According to the record, neither party entered a worksheet, verified and signed by both parties, into evidence reflecting the changes that had taken place subsequent to their emergency hearing on November 5. We conclude that the court's final order for child support could only have been based on Rodney's

2. Because the first child support order that Leslie contests was established by the trial court's

order of April 18, 1991, the Guidelines were in effect.

unsigned and unverified worksheet filed May 13, which contradicted his trial testimony as to income and showed nothing as to payments for the children's health insurance. We hold that the trial court here erred by basing its child support order on Rodney's unverified and unsigned worksheet because use of that worksheet to determine Rodney's child support obligation has no sanction under either the child support guidelines or the rules of evidence and trial procedure.

Second, Leslie argues that the trial court erred by neglecting to credit her with costs she incurs for the children's health insurance when it calculated her weekly available income and arrived at the basic child support obligation. Again, we agree.

■ According to the Commentary to Child Supp. G.1,

"In applying the Guidelines, the following steps are taken:

1. The income of both parents is added together *after certain reductions are taken.*

2. The total is taken to the support table to determine the total cost of supporting a child or children.

3. Certain additional expenses may be added to the basic child support obligation.

4. The child support obligation is then prorated between the parents, based on their proportionate share of income...."

(emphasis added.)

The method for computing a parent's weekly available income, for child support purposes, is set out in Child Supp. G.3(C). Pursuant to Child Supp. G.3(C)(3),

"For each child support order, consideration should be given to the provision of adequate health insurance coverage for the child only. Such health insurance should normally be provided by the parent that can obtain the most comprehen-

sive coverage through an employer at the least cost.

If either parent carries health insurance for the children due support, the cost of that coverage for that child only should be deducted from weekly gross income. If coverage is provided through an employer, only the children's portion should be deducted."

Finally, we look to the Commentary to Child Supp. G.3(C), which states both that "[c]ertain deductions ... are allowed from weekly gross income in arriving at weekly available income" and that "[t]he cost of health insurance for the children *is allowed as a deduction* from weekly gross income in arriving at weekly available income." (emphasis added.)

■ Rodney argues that because Guideline G.3(C) states that a trial court "should" consider the children's health insurance costs in arriving at the basic child support obligation, the court is not mandated to do so. We disagree. In reading the Commentary to Child Supp. G.1 in conjunction with Child Supp. G.3(C) and its Commentary, we determine that the cost for the children's health insurance constitutes a mandatory reduction to be taken from the applicable parent's income before determining the basic child support obligation. Therefore, the trial court erred by neglecting to credit Leslie with costs she incurs for the children's health insurance when it calculated her weekly available income and arrived at the basic child support obligation absent articulated reasons for doing so.[3]

Third, Leslie argues that the trial court erred by failing to include her work-related child care costs in calculating the total child support obligation without articulated reasons for doing so. We disagree.

■ As we stated earlier, the Commentary to Child Supp. G.1 states that, after certain reductions are taken, the incomes of both parents are added together and the

---

**3.** Rodney also contends that at the date of the parties' separation he was providing the children's health insurance premiums "at a cost well below [Leslie's] alleged premium." (Appellee's Brief, p. 2.) In response, we simply state that, pursuant to the Guidelines, if Rodney is able to obtain the most comprehensive medical coverage for the children at the least cost, he should do so and the trial court should either deduct that expense when calculating his weekly available income or articulate reasons for not doing so.

total is taken to the support table to determine the basic child support obligation. Once the basic child support obligation has been determined, certain additional expenses *may be added* to the basic obligation. The revised child support obligation is then prorated between the parents, based on their proportionate share of income.

 Child Supp. G.3(E) addresses work-related child care costs and states that such costs of either parent should be added to the basic support obligation when they are reasonable, do not exceed the level required to provide quality care for the children, and are incurred due to employment or a job search. The public policy consideration supporting an adjustment for work-related child care costs once the basic child support obligation has been determined is set out in the Commentary to Child Supp. G.3(E) as follows:

> "If this cost is not taken into consideration, the custodial parent may find that it is not economically feasible to work because, after the payment of child care and transportation expenses, the household income is little higher than if that parent remained unemployed."

 While we recognize the important public policy goal that custodial parents should be able to afford to work, we nevertheless hold that whether or not to increase a basic child support award to offset employment-related child care expenses is a matter for the trial court's discretion and the court's decision not to allow such an increase does not require a written finding of explanation under Child Supp. R. 3. *Kyle v. Kyle* (1991), Ind.App., 582 N.E.2d 842. The trial court here committed no error by failing to include Leslie's work-related child care costs when it calculated the total child support obligation without articulating reasons for doing so.

We reverse and remand to the trial court with instructions to reconsider Rodney's child support obligation consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

ROBERTSON and RUCKER, JJ., concur.