## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2018, 9:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher M. Forrest
Forrest Legal LLC
Fort Wayne, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re The Marriage of:<br><br>Matthew Strack,<br>*Appellant-Petitioner,*<br><br>and<br><br>Mary Strack,<br>*Appellee-Respondent.* | February 28, 2018<br><br>Court of Appeals Case No. 02A03-1708-DR-2025<br><br>Appeal from the Allen Circuit Court<br><br>The Honorable Thomas J. Felts, Judge<br><br>The Honorable John D. Kitch III, Magistrate<br><br>Trial Court Cause No. 02C01-1603-DR-382 |

**Robb, Judge.**

# Case Summary and Issues

[1] Matthew ("Father") and Mary ("Mother") Strack separated in 2015. Following a hearing, the trial court issued a Decree of Dissolution of Marriage on May 18, 2016, which awarded primary physical custody of the parties' children to Mother, divided the marital estate, and ordered Father to pay Mother $650.00 per week in child support. Father now appeals, presenting two issues for our review: (1) whether the trial court abused its discretion in assessing the amount of child support; and (2) whether the trial court abused its discretion in dividing the marital estate. Concluding the trial court abused its discretion on both counts, we reverse and remand for further proceedings.

# Facts and Procedural History

[2] Father and Mother were married on April 13, 1996, and had thirteen children together, eleven of whom are unemancipated ("Children"). Father filed a petition for the dissolution of marriage on March 16, 2016, Mother filed a counter-petition, and the trial court conducted a hearing on June 28, 2016, wherein the parties presented evidence in a summary fashion. The trial court entered a Provisional Order requiring Father to directly deposit his $650.00 weekly Wal-Mart check directly into Mother's bank account, "in lieu of child support and spousal support." Appellant's Appendix, Volume 2 at 17.

[3] Following a final dissolution hearing, the trial court made its "provisional order of June 28, 2016 for $650 per week [in child support] a permanent Order of the

Court[,]" and specified that it made this deviation "in the best interest of the children." Appealed Order at 2. The trial court also allocated tax exemptions and the parties' responsibilities for the Children's uninsured medical expenses.

[4] Regarding the marital estate, the trial court divided the assets and liabilities of the parties, explaining that its division was "an equal, just, reasonable, fair and equitable award thereof under the facts presented at trial, including the parties' agreement of the same." *Id.* at 5. Father now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

[5] We begin by observing that Mother chose not to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing their argument. *Whittaker v. Whittaker*, 44 N.E.3d 716, 719 (Ind. Ct. App. 2015). In these cases, we apply a less stringent standard of review with respect to showings of reversible error and may reverse the trial court if the appellant—in this case Father—is able to establish prima facie error. *Id.* "Prima facie" means "at first sight, on first appearance, or on the face of it." *Id.* (citation omitted).

[6] On appeal, Father argues the trial court abused its discretion by relying on improper means to calculate his child support obligation and by failing to justify its unequal division of the marital estate.

# I. Child Support

The trial court ordered Father to pay $650.00 per week in child support. Father claims the trial court abused its discretion by failing to adhere to the Indiana Child Support Guidelines and relevant case law. Finding numerous errors with the trial court's order, we agree.

## A. Standard of Review

We presume a trial court's calculation of child support is valid and we review its decision for abuse of discretion. *Thompson v. Thompson*, 811 N.E.2d 888, 924 (Ind. Ct. App. 2004), *trans. denied.* The trial court abuses its discretion if its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.* This broad discretion, however, "must be exercised within the methodological framework established by the guidelines." *Quinn v. Threlkel,* 858 N.E.2d 665, 670 (Ind. Ct. App. 2006).

## B. Child Support Order

The trial court made the following finding regarding child support:

> 5.1 The Court makes the provisional order of June 28, 2016 for $650.00 per week a permanent Order of the Court. The Court makes this deviation in the best interest of the children.

Appealed Order at 2. The Provisional Order dated June 28, 2016 referenced by the court provides the following regarding "Temporary Child Support":

> 4.1 Father's check from Wal-Mart is directly deposited into
> the Chase account ($650.00 per week) in lieu of child
> support and spousal support.

Appellant's App., Vol. 2 at 17.

[10] Initially, we observe the trial court's purported award of child support is *not* an award of child support at all. The provisional order of June 28, 2016, which the court's final order makes permanent, states that Father's check from Wal-Mart would be directly deposited into Mother's bank account "in lieu of child support and spousal support." *Id.* Moreover, Father was involuntarily terminated from his job at Wal-Mart just before the final hearing. *See* Transcript, Volume 2 at 3. It would be difficult—indeed impossible—for Father to directly deposit a payroll check from a company at which he is no longer employed.

[11] With that said, the Indiana Child Support Guidelines allow a trial court to impute potential income to a parent if the court is convinced the parent's underemployment "has been contrived for the sole purpose of evading support obligations." *Kondamuri v. Kondamuri,* 852 N.E.2d 939, 950 (Ind. Ct. App. 2006). And, we recently explained in *Miller v. Miller,* 72 N.E.3d 952, 956 (Ind. Ct. App. 2017), that:

> While the Guidelines clearly indicate that a parent's avoidance of
> child support is grounds for imputing potential income, it is not a
> necessary prerequisite. For example, the relevant commentary
> states, "When a parent is unemployed by reason of involuntary
> layoff or job termination, it still may be appropriate to include an

amount in gross income representing that parent's potential income." Ind. Child Support Guideline 3(A)(3), cmt 2c(4). Thus, it is within the trial court's discretion to impute potential income even under circumstances where avoiding child support is not the reason for a parent's unemployment.

(quoting *In re Paternity of Pickett*, 44 N.E.3d 756, 766 (Ind. Ct. App. 2015)). The trial court's Decree of Dissolution of Marriage is absent a finding of imputed income. Therefore, the trial court's award is facially deficient and Father has demonstrated prima facie error.

[12] Second, even assuming the trial court's order of $650.00 per week was indeed an order for child support, the trial court does not provide a basis for this amount. "We cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded." *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 728 (Ind. Ct. App. 2009). "Such revelation could be accomplished either by specific findings or by incorporation of a proper worksheet." *Cobb v. Cobb,* 588 N.E.2d 571*,* 574 (Ind. Ct. App. 1992). Here, the trial court neither made factual findings nor incorporated a valid worksheet.

[13] Our review of the record reveals a worksheet submitted by Mother proposing a $650.00 support payment from Father. Respondents' Exhibit [Volume] A-I at 11. To the extent the trial court relied on this worksheet, doing so was improper because it was unsigned and never incorporated into the Decree. The Indiana Child Support Guidelines provide:

1. Submitting Worksheet to Court. In all cases, a copy of the worksheet which accompanies these Guidelines shall be completed and filed with the court when the court is asked to order support. This includes cases in which agreed orders are submitted. Worksheets *shall be signed by both parties,* not their counsel, under penalties for perjury.

Ind. Child Support Guideline 3(B)(1) (emphasis added). We have previously held that unsigned, unverified worksheets should not be the basis for a trial court's award. *Vandenburgh,* 916 N.E.2d at 723 (noting "the worksheets were improper because they were not signed or verified."); *Cobb,* 588 N.E.2d at 574 (concluding child support order based on unverified and unsigned worksheet was error because the use of such a worksheet "has no sanction under either the child support guidelines or the rules of evidence and trial procedure."). We somewhat limited those holdings in *In re Paternity of Jo.J.,* 992 N.E.2d 760, 770 (Ind. Ct. App. 2013), but only where the worksheet is supported, rather than contradicted, by the evidence in the record. Because evidence such as Father's involuntary termination and the amounts reflected by other documents contradicted Mother's worksheet, it should not have served as the basis for the trial court's award.

[14] Third, the Decree states that Father's $650.00 support order was a "deviation." Appealed Order at 2. A trial court may, in its discretion, "deviate from the presumptive amount specified by the guidelines if application would result in an unjust award." *Cobb,* 588 N.E.2d at 574 (citing Ind. Child Support Guideline 3). When deviating from Guideline support, however, the trial court "must set

forth a written finding stating the factual basis for the deviation." *In re Jo.J.*, 992 N.E.2d at 771. Here, the trial court makes no such finding, merely stating that such a finding was "in the best interest of the children." Appealed Order at 2. This is insufficient to support a deviation from the Guidelines.[1] The commentary to Indiana Child Support Guideline 3(F) states:

> 3. Deviation from Guideline Amount. If the court determines that the Guideline amount is unjust or inappropriate, a written finding shall be made setting forth the factual basis for deviation from the Guideline amount. . . . A pro forma finding that the Guidelines are not appropriate does not satisfy the requirement for a specific finding of inappropriateness in a particular case, which is required in order to deviate from the guideline amount. . . .

[15]    We have previously explained that although the findings accompanying a deviation "need not be especially formal[, t]hey must . . . set forth the trial court's reason for deviating from the guidelines' amount so that as a reviewing court we may know the basis for the court's decision." *Talarico v. Smithson,* 579 N.E.2d 671, 673 (Ind. Ct. App. 1991). A finding that the deviation is in the

---

[1] Mother's child support worksheet shows Father's child support obligation to be $551.67 with credits of $65.00 for the children's health insurance premium and $27.57 for parenting time of 52 overnights, which would represent a total child support obligation of $459.10. Respondents' Exhibit [Volume] A-I at 11. However, Mother requested an upward deviation of $190.90 for a total child support obligation of $650.00 because "The child support worksheet only provides for 9 children at home; these parties have 11 unemancipated, minor children that need to be provided for. It is only appropriate to maximize the weekly support payments at 50% of the Combined Weekly Adjusted Income." *Id.* at 12.

"best interest of the children" is inadequate to reveal the basis of the court's decision.

[16] Because the trial court failed to support its award with factual findings or the incorporation of a *valid* child support worksheet, we are unable to determine whether the court complied with the Child Support Guidelines. Therefore, Father has demonstrated prima facie error and we must remand to the trial court for clarification of its award. *See, e.g., Dye v. Young,* 655 N.E.2d 549, 551 (Ind. Ct. App. 1995).

[17] Father also argues that if we remand the issue of child support, we should remand for the trial court to reconsider its determination regarding uninsured medical expense obligations and the allocation of child tax exemptions. Because these determinations are integrally tied to the appropriate amount of child support, we remand these issues to be considered accordingly.

## II. Marital Property

[18] Father also challenges the trial court's division of the marital property. Specifically, Father claims the property division is not "equal" as the trial court purports, and that while it is well within the trial court's discretion to make an unequal division of the marital property, it must comply with Indiana's marital property division statute and provide its reasoning for doing so. Either way, Father contends, the trial court abused its discretion. Again, we agree.

# A. Standard of Review

[19]     The division of marital assets is within the trial court's discretion, and we reverse only for abuse of that discretion. *Alexander v. Alexander*, 927 N.E.2d 926, 933 (Ind. Ct. App. 2010), *trans. denied.* Father must overcome the presumption that the trial court complied with the law and we consider the evidence most favorable to the trial court's disposition of the marital property. *Id.*

# B. Division of Assets

[20]     In a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before the final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a). "Property," in this context, means "all the assets of either party or both parties." Ind. Code § 31-9-2-98. "The requirement that all martial assets be placed in the marital pot is meant to [e]nsure that the trial court first determines that value before endeavoring to divide property." *Montgomery v. Faust*, 910 N.E.2d 234, 238 (Ind. Ct. App. 2009).

[21]     Indiana Code section 31-15-7-5 governs the distribution of marital property and provides as follows:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

    (A) before the marriage; or

    (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

    (A) a final division of property; and

    (B) a final determination of the property rights of the parties.

[22] If a court adheres to the foregoing statutory presumption and divides the parties' property equally, it need not set forth findings supporting its award.

But, we have long held that when deviating from the presumption of an equal division, the trial court must state its reasons for doing so. *Lulay v. Lulay,* 591 N.E.2d 154, 155-56 (Ind. Ct. App. 1992) (noting that if the trial court deviates from an equal division, the "trial court must enter findings explaining why it awarded an unequal division of the property."); *cf. Kirkman v. Kirkman,* 555 N.E.2d 1293, 1294 (Ind. 1990) (holding that trial court findings are not compelled for "insubstantial deviations from precise mathematical equality.")

[23]     Following the final hearing, the trial court divided the assets and liabilities of the parties. Our review of this issue, however, is hindered by the fact that the trial court failed to calculate the gross marital estate, the values of the martial assets, or the total value of each party's share in the Decree. *See Montgomery v. Faust,* 910 N.E.2d 234, 238 (Ind. Ct. App. 2009) ("Appellate courts are ill-equipped to determine the value of specific assets or of the total martial estate in the first instance, so it is vital to our review to have the trial court do so."). Instead, the trial court simply allocated the parties' assets and ordered that the debt from the former martial residence be shared equally while the parties would retain any debts held solely in their name.[2] What follows is our best attempt to make sense of the Decree:

---

[2] Mother testified that the Fort Wayne City Utilities bill "is in both of our names, but . . . that was with the Provisional Orders that I was responsible to pay that." Tr., Vol. 2 at 37. Therefore, the Decree does not specifically allocate the Fort Wayne Utilities Bill but, in order to view the evidence in a light most favorable to the trial court's disposition of the property, we attribute it to Mother. *See Alexander*, 927 N.E.2d at 933.

|  | Father | Mother |
|---|---|---|
| **Assets** |  |  |
| Wal-Mart 401(k) |  | $33,314.40 |
| Wal-Mart Stocks | $2,323.67 |  |
| Pizza Hut 401(k) | $281.03 |  |
| Total Assets: | $2,604.70 | $33,314.40 |
| **Liabilites** |  |  |
| Marital Residence Debt | $14,425.34 | $14,425.35 |
| Father's Medical Bills | $1,372.19 |  |
| Xfinity Bill |  | $232.83 |
| Fort Wayne City Utilities Bill |  | $836.68* |
| Total Liabilites: | $15,797.53 | $15,494.86 |
| Assets - Liabilties | $2,604.70 - $15,797.53 | $33,314.40 - $15,494.86 |
| **Total Net Value:** | (negative) $13,192.83 | $17,819.54 |

*See* Appealed Order at 4-5. After allocating the foregoing assets and liabilities, the trial court concluded:

> 11.1 This division of property and assignment of liabilities entered herein is an *equal*, just, reasonable, fair and equitable award thereof under the facts presented at trial, including the parties' agreement of the same. See IC 31-15-6-4 and 5.

Appealed Order at 5 (emphasis added).

[24] Having noted that the trial court's clear intention was to order not only a just, reasonable, and fair distribution, but also an *equal* distribution, the Decree clearly does not come close to meeting that characterization. Even when viewed in a light most favorable to the trial court's award, the evidence reveals a discrepancy of $31,012.37: Father received *negative* $13,192.83 while Mother received $17,819.54. Because the trial court's division of property was not

equal and the trial court failed to state its reasons for deviating from the presumption of an equal division, Father has demonstrated prima facie error. *See, e.g., In re Marriage of Davidson,* 540 N.E.2d 641, 646 (Ind. Ct. App. 1989).

# Conclusion

Father has successfully demonstrated prima facie error regarding both the trial court's award of child support and its division of the parties' marital property. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

On remand, we direct the trial court to the Indiana Child Support Guidelines and, in accordance therewith, the court should determine an award supported by specific factual findings or a *valid* child support worksheet incorporated into its order. If the trial court still determines the Guideline amount is unjust or inappropriate under the circumstances, the trial court shall make written findings setting forth its factual basis for deviating from the Guideline amount.

Similarly, we direct the court to follow the statutory presumption and effect an equal division of the marital property or provide its rationale for choosing to do otherwise.

Reversed and remanded.

Crone, J., and Bradford, J., concur.