

**FILED**

Apr 22 2020, 9:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Alexander N. Moseley
Ciyou and Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Samantha M. Joslyn
Law Office of Samantha M. Joslyn
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Anselm,

*Appellant-Respondent,*

v.

Ashley Anselm,

*Appellee-Petitioner.*

April 22, 2020

Court of Appeals Case No.
19A-DC-2728

Appeal from the Jasper Superior
Court

The Honorable Russell D. Bailey,
Judge

Trial Court Cause No.
37D01-1803-DC-205

**Najam, Judge.**

## Statement of the Case

Joshua Anselm ("Father") appeals the dissolution court's final decree dissolving his marriage to Ashley Anselm ("Mother"). Father presents three issues for our review, which we revise and restate as the following four issues:

1.  Whether the dissolution court erred when it awarded Mother primary physical custody of their minor children.

2.  Whether the court erred when it relied on an unsigned child support worksheet to calculate Father's child support obligation.

3.  Whether the court erred when it ordered Father to be solely responsible for all of the Children's uninsured medical expenses despite the fact that his child support payments included a prepayment of uninsured medical expenses.

4.  Whether the court erred when it concluded that the parties had $33,000 in equity in their home.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

Mother and Father were married on May 31, 2014, and they have two minor children together, V.A., born March 12, 2015, and G.A., born October 23, 2016 (collectively, the "Children"). During the marriage, Father's work schedule required him to work three overnights per week one week and four overnights per week the next week on rotating nights. Mother worked as an office manager for her parent's company.

On March 20, 2018, Mother filed a petition for separation and a petition for temporary custody of the Children and child support. At a hearing on Mother's petitions, the parties signed and submitted a child support obligation worksheet. In that worksheet, the parties agreed that Father earned $900 per week and that

Mother earned $543 per week. The parties also gave Father a credit in the amount of $50.00 for the Children's health care coverage and $46.57 for Children's overnight visits with Father. Based on that information, the parties calculated Father's recommended child support obligation to be $218.00 per week. Following the hearing, the court entered an order in which it granted Mother temporary physical custody of the Children and ordered Father to pay child support in a manner that is "consistent with" the worksheet the parties had filed in court. Appellant's App. Vol. II at 40. The court also ordered the parties to be equally responsible for any uninsured medical expenses.

On August 17, Mother filed a motion to convert her motion for legal separation into a petition for dissolution of marriage, which motion the dissolution court granted. The court then appointed a guardian ad litem ("GAL"). The GAL submitted her report to the court on December 25. In her report, the GAL recommended that Mother have primary physical custody based on the fact that Mother "is the primary caregiver for doctor's appointments and routine daily needs" of the Children. Appellee's App. Vol. II at 8.

The dissolution court held a final hearing on Mother's petition for dissolution. During the hearing, the GAL "confirm[ed]" her recommendation that Mother have primary physical custody of the Children. Tr. at 16. Specifically, she testified that it would be in the Children's best interests for Mother to have primary physical custody because Mother would provide the Children with "a stable routine and consistency[.]" *Id.* at 24.

[7] During the hearing, the parties stipulated that Mother's income was still $543.00 per week and that Father's was $900.00 per week. And Mother testified that Father pays $52.50 per week for the Children's healthcare coverage and that he pays $200 per month into his health savings account. Mother then moved to admit two unsigned child support obligation worksheets. On the first worksheet, Mother used the parties' previously agreed upon incomes and credited Father with $52.50 per week for the Children's health care coverage and $46.57 for 96-100 overnight visits. Based on those numbers, Mother calculated Father's recommended child support obligation to be $217 per week. *See* Ex. at 3.

[8] On the second worksheet, Mother again used the parties' incomes and credited Father with $52.50 for health care coverage, but Mother credited Father with $90.53 for 136-140 overnight visits. Accordingly, Mother calculated Father's recommended child support obligation to be $173.00 per week. *See* Ex. at 6. Father stated that he had "no objection" to the admission of either of those worksheets. Tr. at 40, 41.

[9] At the conclusion of the hearing, the court dissolved the parties' marriage. Thereafter, the court entered the following findings and conclusions:

CUSTODY AND VISITATION

* * *

3. The Father and Mother shall have joint legal custody of the minor children with Mother awarded physical custody of the

minor children.  The Court finds that it is in the best interest of the minor children that they remain in physical custody of the Mother as she is the primary caregiver of the minor children and it is important that the [C]hildren have a consistent routine.

\* \* \*

CHILD SUPPORT

1.  The parties had stipulated to Father's weekly gross income being $900.00 per week with Mother's being $543.00 per week. The Court accepts this stipulated fact.

2.  Commencing forthwith and until the minor children are emancipated, graduate from college, or reach the age of nineteen (19) years or until further Order of the Court, whichever occurs first, Father shall pay to Mother for and on behalf of the parties' minor children [] the amount of One Hundred Seventy-Three ($173.00) dollars per week. . . .

3.  Father shall continue to provide medical, dental, optical, and pharmaceutical coverage for the minor children and will as long as it is available for him to do so at a reasonable cost.

4.  Father shall be solely responsible for all uninsured medical costs based upon his having the Health Savings Account.

\* \* \*

REAL ESTATE

1.  The Parties own real estate located at 224 N. New York Street, Remington, IN that was owned by Father prior to marriage and remains in his name alone.

2.  The value of the property was disputed at the Final Hearing as there have been improvements made to the property during the marriage.  However, an appraisal of the property was not done by either party and there was no evidence of the value of the improvements.  Therefore, the Court finds the value of the property is $64,000.

* * *

4.  There is a mortgage on the real estate which has a balance of $34,987.03 at the time of the separation, along with what is known as the basement loan with an initial balance of $19,376.00 and a remaining balance of $18,645.00 at the time of separation. . . .

5.  That there is believed to be equity in the house in the amount of $33,000.00.  Mother shall be entitled to half of the equity, the same being $16,500, which shall be paid to her within 180 days.

Appellant's App. Vol. II at 11-14.  This appeal ensued.

# Discussion and Decision

### *Standard of Review*

[10]  Father appeals the dissolution court's final decree dissolving his marriage to Mother.  As our Supreme Court has explained:

> [T]here is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters.

> Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. On appeal, it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment.

*Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quotation marks and citations omitted). Further, where, as here, the dissolution court *sua sponte* enters findings and conclusions, "the appellate court reviews issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment." *Id*. at 123. "Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence." *Id*. at 123-24.

### Issue One: Physical Custody

[11] Father first contends that the dissolution court erred when it granted primary physical custody of the Children to Mother. When making its initial custody determination, the court shall consider all relevant factors and then enter a custody order in accordance with the best interests of the Children. *See* Ind. Code § 31-17-2-8 (2019). The factors a court must consider include: the age and sex of the children; the wishes of the children's parent or parents; the wishes of the children, with more consideration given if the children are at least

fourteen years of age; the interaction and interrelationship of the children with their parents, sibling, and any other person who may significantly affect their best interests; the children's adjustment to the their home, school, and community; the mental and physical health of all individuals involved; evidence of a pattern of domestic or family violence by either parent; evidence that the children have been cared for a by de facto custodian; and a designation in a power of attorney of the children's parent or de facto custodian. *Id.*

[12] On appeal, Father asserts that the court erred when it awarded primary physical custody of the Children to Mother because it did not include any findings that "reveal" that there was a consideration of the statutory factors "as required in an initial custody determination." Appellant's Br. at 16. In other words, Father maintains that the court's findings of fact are insufficient because the court did not list the statutory factors and, as such, "the trial court provide[d] no theory upon which it made its physical custody determination." *Id.* at 17. We cannot agree.

[13] First, we note that the dissolution court was not required to enter a finding as to each statutory factor it considered in making its custody determination. *See Hecht v. Hecht*, __N.E.3d__, No. 19A-DC-1934, 2020 WL 1057248, at *7 (Ind. Ct. App. Mar. 5, 2020) (holding that a trial court did not err when it entered an order modifying custody even though it did not specifically mention each factor it was required to consider), *not yet certified*. Indeed, the plain language of the statute only requires a court to "consider" the factors, not to make a finding regarding each one. *See* I.C. § 31-17-2-8. And even though the court did not

specifically mention Indiana Code Section 31-17-2-8 in its order, we presume trial courts know and follow the law. *See Hecht*, 2020 WL 1057248, at *7. Accordingly, we cannot say that the dissolution court's findings of fact are insufficient simply because it did not explicitly discuss the statutory factors.

[14] Further, the purpose of Trial Rule 52(A) findings is "'to provide the parties and the reviewing court with the theory upon which the trial judge decided the case[.]'" *M.M. v. M.H. (In re Paternity of S.A.M.)*, 85 N.E.3d 879, 885 (Ind. Ct. App. 2017) (quoting *Carmichael v. Siegel*, 670 N.E.2d 890, 891 (Ind. 1996)). Here, while the dissolution court's findings on this issue are not extensive, the court entered sufficient findings to describe the theory upon which the court decided the case. Indeed, the court found that it is in the best interests of the Children for Mother to have primary physical custody because "she is the primary caregiver" and because "it is important that the [C]hildren have a consistent routine." Appellant's App. Vol. II at 12. Those findings consider and address what is in the best interest of the Children.

[15] And the evidence supports those findings.[1] Indeed, the GAL testified that the Children are "both well adjusted to" the schedule with Mother and that "it would be detrimental" for the Children to change that schedule. Tr. at 24. And, the GAL testified that it would be in the Children's best interests for Mother to have primary physical custody because she can provide them with "a

---

[1] Father does not argue on appeal that those findings are clearly erroneous.

stable routine and consistency." *Id.* We therefore cannot say that the dissolution court entered insufficient findings or that it otherwise abused its discretion when it awarded Mother primary physical custody of the Children.

### Issue Two: Reliance on Unsigned Child Support Worksheet

[16] Next, Father asserts that the dissolution court erred when it ordered him to pay $173.00 per week in child support because the court failed to enter findings to support its calculation. Generally, "[w]e cannot review a support order to determine if it complies with the guidelines unless the order reveals the basis for the amount awarded." *Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 728 (Ind. Ct. App. 2009). "'Such revelation could be accomplished by either a specific finding or by incorporation of a proper worksheet.'" *Id.* (quoting *Cobb v. Cobb*, 588 N.E.2d 571, 574 (Ind. Ct. App. 1992)).

[17] Here, the dissolution court did not enter any findings of fact regarding Father's support obligation or complete its own worksheet. But it is clear that the court relied on one of the child support worksheets that Mother introduced as evidence at the final hearing when it ordered Father to pay $173.00 per week. However, Father argues that it was error for the court to rely on that worksheet because it was unsigned and, as such, was not a proper worksheet.

[18] We agree with Father that, in general, a worksheet is improper if it is not signed or verified. *See id.* The requirement that a worksheet be signed and verified is due to the fact that an unsigned worksheet "has no sanction under either the child support guidelines or the rules of evidence and trial procedure." *Cobb*, 588

N.E.2d at 575. In other words, the purpose of requiring a signed worksheet is to prevent a party from incorrectly or improperly raising or lowering the child support obligation. But, here, Mother and Father stipulated to their respective incomes at the beginning of the dissolution hearing. And Mother used those incomes when she calculated Father's child support obligation in her worksheets. As such, there is no risk that Mother misrepresented either party's income in order to increase Father's child support obligation.

[19] Further, if Father believed that Mother's worksheet was inaccurate or otherwise inappropriate for a lack of signature or otherwise, Father could have objected when Mother moved to admit it as evidence. But Father did not. Rather, Father explicitly stated that he had "no objection." Tr. at 41. In addition, Mother was a witness, under oath, during the hearing, and Father could have cross-examined her about the content of her worksheet. But, again, he did not. And Father does not direct us to any information in the unsigned worksheet that he contends is inaccurate. *Cf. Cobb*, 588 N.E.2d at 574-75 (holding that the trial court erred when it relied on an unsigned child support worksheet because there was a discrepancy between the income included on the worksheet and evidence regarding income that was introduced at trial). Because Father did not object to the worksheet or otherwise dispute the content, he cannot now complain that the dissolution court improperly relied on that exhibit. We therefore hold that the court did not err when it relied on Mother's unsigned worksheet.

Still, Father contends, "due to the insufficiency of the Findings, coupled with the absence of a Child Support Worksheet, is it unclear whether Father received a credit" for the Children's health insurance premium. Appellant's Br. at 23. But as discussed above, the dissolution court did not err when it relied on Mother's child support worksheet. And in that worksheet, Mother credited Father with $52.50 per week for the Children's health insurance coverage.[2] *See* Ex. at 6. Father has not demonstrated that the dissolution court failed to properly credit him for the Children's health insurance premiums.

### Issue Three: Uninsured Medical Expenses

Father next contends that the dissolution court erred when it ordered him to both pay the recommended amount of child support and also ordered him to pay for all uninsured health care expenses[3] for the Children. Specifically, Father asserts that the court's order "results in Father paying twice for the same medical expenses." Reply Br. at 16. We must agree.

The Indiana Child Support Guidelines are clear: "The data upon which the Guideline schedules are based include a component for ordinary health care expenses." Ind. Child Support Guideline 7. Specifically, "up to six percent (6%) of the Basic Child Support Obligation" is for the custodial parent to cover

---

[2] Father makes no argument on appeal that he pays more than $52.50 per week for the Children's health insurance premiums.

[3] The parties do not dispute that, although Father has health insurance for the Children, they are still likely to incur various uninsured health care expenses. They likewise do not dispute that Father's health savings account is available to pay for such expenses.

"uninsured healthcare expenses." Child Supp. G. 7 cmt. The noncustodial parent is, in effect, "prepaying health care expenses every time a support payment is made." *Id*. The rule, which attributes six percent of basic child support to uninsured health care expenses, is "designed to ensure that the non-custodial parent does not pay twice for the same medical expenses." *Tigner v. Tigner*, 878 N.E.2d 324, 328 (Ind. Ct. App. 2007).

[23] Here, the court ordered Father to pay child support in the amount of $173 per week. Absent direction to the contrary from the trial court, those payments included a "prepayment" from Father to Mother for uninsured medical expenses up to 6% of Father's basic child support obligation, which the worksheet identified as up to $951.60 annually in such costs. *See* Child Supp G. 7 cmt; Ex. at 6. That is, the court ordered Father to prepay to Mother, through his support obligation, the first $951.60 per year in uninsured health care costs for the Children. However, notwithstanding that prepayment, the court *also separately* ordered Father to be solely responsible for paying "all" uninsured medical expenses because Father has a health savings account. Appellant's App. Vol. II at 13.

[24] The court's order, in effect, requires Father to pay for uninsured medical expenses twice—a prepayment when he pays his child support obligation, and the actual, full payment when the uninsured health care expenses are incurred. Such double payments are precisely the scenario the six percent rule was designed to prevent. *Tigner*, 878 N.E.2d at 324.

[25]    Usually, the custodial parent is responsible for the first 6% in uninsured healthcare expenses, and that 6% is included in the noncustodial parent's support obligation.  *See* Child. Supp. G. 7 cmt.  However, our trial courts have broad discretion in such matters, and, if a court concludes that the noncustodial parent should be responsible for 100% of those expenses, the court should either enter a finding that it is awarding the 6% that is already incorporated into the noncustodial parent's support obligation as a credit back to the noncustodial parent, or the court should enter a finding as to why such a credit is not appropriate on the facts before the court.

[26]    Here, the trial court neither awarded Father a credit for the 6% of the health care expenses that he is already paying through his child support obligation, nor did the court explain why such a credit would be inappropriate on the facts here.  Thus, the court's order has Father paying twice for the same medical expenses without explanation.  Accordingly, we reverse the court's order and remand with instructions for the court either to order Mother to pay the first $951.60 in medical expenses, to credit Father with $951.60 per year, or to explain why crediting Father with that 6% is not appropriate.[4]

---

[4] Father also asserts that he should receive a credit toward his child support payment for the $200 per month he contributes to his health savings account.  We cannot agree.  We first note that there is no evidence that Father is required to contribute to that account.  As such, Father could reduce or eliminate his contribution at any time.  Further, Father did not present any evidence to demonstrate how much of his $200 monthly contribution would be used exclusively for the Children's medical expenses.  Accordingly, we cannot say that the dissolution court erred when it did not credit Father with $200 per month toward his child support obligation.

## Issue Four:  Amount of Equity in the Home

[27]   Finally, Father contends, and Mother agrees, that the dissolution court erred when it awarded Mother $16,500 based on its conclusion that the parties had $33,000 in equity in the home.  Specifically, Father asserts that "the court's Findings do not support its conclusion."  Appellant's Br. at 19.  We agree.

[28]   Here, the court found that the parties' home had a value of $64,000.  The court also found that the parties had a mortgage with a balance of $34,987.03 and another loan with a balance of $18,645.00.  Based on the parties' debt, which totals $53,632.03, and the value of the home as found by the court, the amount of the parties' equity is $10,367.97, not $33,000.  We therefore reverse the court's order awarding Mother $16,500, or 50%, of the equity, and we remand with instructions for the court to divide the correct amount of equity between the parties.

## Conclusion

[29]   In sum, the dissolution court's findings regarding custody were not insufficient simply because the court did not make a specific finding as to each of the statutory factors.  Further, the court did not err when it relied on Mother's unsigned child support worksheet because the parties had stipulated to their respective incomes and because Father explicitly stated that he had no objection to the admission of that unsigned worksheet as evidence at the final hearing.  However, the court erred when it ordered Father to pay for all uninsured medical expenses without crediting Father with an equal amount toward his

child support obligation. Finally, the trial court's findings that the home was valued at $64,000 and that the parties had a total debt of $53,630.03 do not support its conclusion that the parties had $33,000 in equity in the home.

[30] Accordingly, we affirm the trial court's award of primary physical custody to Mother. However, we reverse the court's order that Father pay for all uninsured medical expenses, and we remand with instructions for the court to either order Mother to pay for the first $951.60 in medical expenses or to credit Father with that amount toward his child support obligation. And we reverse the dissolution court's award of $16,500 to Mother and remand with instructions for the court to split the actual equity between the parties.

[31] Affirmed in part, reversed in part, and remanded with instructions.

Kirsch, J., and Brown, J., concur.